Louie Lopez, pro per
1550 Vista Del Valle Way
La Habra Heights, CA. 90631
sushine11200711@gmail.com
Tel: (714) 791-1805

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Louie Lopez, an individual<br><br>Plaintiff,<br><br>VS.<br><br>City of La Habra Heights, a public entity; City Manager, Fabiola Huerta, individually; Assistant City Manager Rafferty Wooldridge, individually; City Building Inspector Michael Moore, individually; City Attorney Michael Maurer, individually; City Attorney Brandon Sanchez, individually;<br><br>Defendants<br><br>Building official Scott Fazekas, individually;<br>Assistant Fire Chief of La Habra Heights Timothy Peel, individually;<br><br>Proposed Defendants | CASE NO.:  8:21-cv-01193-JGB-MAR<br><br>U. S. District Honorable Judge : Jesus G. Bernal<br><br>U. S. Magistrate Judge: Margo A. Rocconi<br><br>First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief:<br><br>1. Violation of Federal Civil Rights<br>2. Conspiracy<br>3. Abuse of Office/Authority<br>4. Unreasonable Search - Search With a Warrant<br><br>**[Jury Trial Demanded]** |

## COMPLAINT AND REQUEST FOR INJUCTION

**I     The Parties to This Complaint**

**A           Plaintiff**

Name:                  Louie Lopez

Street Address:     1550 Vista Del Valle Way

City And County:  City of La Habra Heights, Los Angeles County

State and Zip Code: California, 90631

Telephone Number：(714) 791-1805

Email Address：    pacificbound1966@gmail.com

**B     Defendants**

**Defendant No 1:**

  Name:   The City of La Habra Heights

  Street Address：    1245 N. Hacienda Road

  City and County:        City of La Habra Heights, Los Angeles County

  State and Zip Code:  California, 90631

  Telephone Number：(562) 694-6302

**Defendant No 2：**

  Name: Fabiola Huerta (Sued in her individual capacity)

  Job and Title: Manager of the City of La Habra Heights

  Street Address：    1245 N. Hacienda Road

  City and County:        City of La Habra Heights, Los Angeles County

  State and Zip Code:  California, 90631

Telephone Number：562-694-6302, ext. 227

Email Address：        Fhuerta@lhhcity.org

**Defendant No 3:**

Name: Rafferty Wooldridge (Sued in his individual capacity)

Job and Title: Assistant Manager of City of La Habra Heights

Street Address：        1245 N. Hacienda Road

City and County:        City of La Habra Heights, Los Angeles County

State and Zip Code:   California, 90631

Telephone Number：562-694-6302, ext. 233

Email Address：        rwooldridge@lhhcity.org

**Defendant No 4:**

Name: Michael Moore  (Sued in his individual capacity)

Job and Title: Building Inspector of City of La Habra Heights

Street Address：        1245 N. Hacienda Road

City and County:        City of La Habra Heights, Los Angeles County

State and Zip Code:   California, 90631

Telephone Number：562-694-6302, ext. 226

Email Address：        michael.maurer@bbklaw.com


**Defendant No. 5:**

Name: Michael Maurer (Sued in his individual capacity)

 Job and Title: City Counsel of City of La Habra Heights

Street Address：        300 S Grand Ave, Fl 25

City and County:        Los Angeles, Los Angeles County

3

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

State and Zip Code:  CA 90071-3169

Telephone Number：213-617-8100

Email Address：mmaurer@lhhcity.org & michael.maurer@bbklaw.com

**Defendant No. 6:**

Name: City Attorney Brandon Sanchez (Sued in his individual capacity)

Job and Title: City Counsel of City of La Habra Heights

Street Address：        300 S Grand Ave, Fl 25

City and County:          Los Angeles, Los Angeles County

State and Zip Code:  CA 90071-3169

Telephone Number：213-617-8100

Email Address：bsanchez@lhhcity.org & Brandon.Sanchez@bbklaw.com

**Proposed Defendant No. 7 is waiting on Judge's order to serve First
Amended Complaint and Summon:**

Name: Scott Fazekas (Sued in his individual capacity)

Job and Title:  Building Official in Building and Safety Division of City of La
Habra Heights

Street Address：        1245 N. Hacienda Road

City and County:          City of La Habra Heights, Los Angeles County

State and Zip Code:  California, 90631

Telephone Number：562-694-6302

Email Address：        sfazekas@lhhcity.org

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

**Proposed Defendant No. 8 is waiting on Judge's order to serve First Amended Complaint and Summon:**

Name: Timothy a.k.a Tim Peel (Sued in his individual capacity)

Job and Title:  Assistant Fire Chief Timothy Peel of La Habra Heights Fire Department of Peel City of La Habra Heights

Street Address：        1245 N. Hacienda Road

City and County:         City of La Habra Heights, Los Angeles County

State and Zip Code:   California, 90631

Telephone Number：562-694-6302

Email Address：        tpeel@lhhcity.org

## II    Jurisdiction

A. Louie Lopez, a resident of La Habra Heights City in Los Angeles County, is bringing this civil rights lawsuit pursuant to 42 U.S.C. § 1983 to redress the deprivation by Defendants, at all herein acting under color of authority (state law), of rights secured to Plaintiff under the United States Constitution, including the First and Fourteenth Amendments, and under federal and state laws where applicable.

B. Jurisdiction is conferred on this court by 28 U.S.C. §1331.

C. Jurisdiction is also conferred on this Court by 28 U.S.C. § 1343(a)(3), which provides for original jurisdiction in this Court for all suits brought pursuant to 42 U.S.C. 1983.

D. This court has supplemental jurisdiction over those claims of Plaintiff based on state laws pursuant to 28 U.S.C. §1367.

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

### III    STATEMENT OF FACTS

Plaintiff filed the original Complaint on (07/12/2021). Even though there is a two year limitation for a lawsuit, the beginning of Defendants' mistreatment to and oppression on Plaintiff began in 2018 and has been continued to this day. The statute of limitations has been continuous due to Defendants' malevolent actions.

**A The Execution of Inspection Warrant Without the 24 Hour Advanced Notice Was Interrupted By Plaintiff's Brother, and La Habra City Building Inspector Michael Moore Has Held A Grudge with Plaintiff Ever Since**

1. Plaintiff Louie Lopez (hereinafter Plaintiff) is a retired law enforcement officer for the State of California after 27 years of service. On or about 09/04/2004, Plaintiff moved to the City of La Habra Heights upon the purchase of the property located at 1550 Vista Del Valle Way, La Habra Heights, CA 90631.

2. Plaintiff has been evicted from his house by the City of La Habra Heights since 09/04/2018 and is still homeless. Government is there to protect and help the people. The eviction has made life extremely difficult for the Plaintiff, especially during the last two years of a pandemic. There is no way for the Plaintiff to work out a solution with the City, they have been vindictive and unreasonable every step of the way.  Plaintiff has to seek justice from the court.

3. It all started in the summer of 2018 when Plaintiff began to make some small changes and improvements to his house and regular upkeep.

Through deceit, the City obtained an Inspection Warrant on Plaintiff's house from the court. On 07/16/2018, City employees, together with the City attorney, a fire marshal of La Habra Heights Fire Department, and a sheriff, came to Plaintiff's

house to execute the inspection warrant **without** the 24 hour advanced notice required by the law.

4. Uneased by the sudden intrusion, Plaintiff Mr. Lopez called his brother, David Lopez, for help. David Lopez is a retired Deputy District Attorney and was a 32-year veteran with the Los Angeles County District Attorney's Office.  David Lopez came over and said to the City employees that **without** the 24 hour advanced notice, they should not come to execute the Inspection Warrant.  David, his brother, thought the City's execution of inspection warrant on Mr. Lopez's property was an outrage and was an overreach of government authority. There weren't any criminal activities, let alone any violation of law.  David Lopez came over to the main part of the house right away. Defendant City Building Inspector Michael Moore exchanged a few words with David Lopez, David Lopez then told Michael Moore to leave the property and to **stop threatening the cleaning lady with jail time** (emphasis added). Michael Moore lashed his anger on Plaintiff Mr. Lopez and has held a grudge over him ever since. It was at this time, the City used all the power to get an inspection warrant. However, the execution of the inspection warrant was aborted.  (See also Paragraph 27).

5. David Lopez not only stopped the execution of inspection warrant, he also filed an ex parte hearing, on 07/18/2018, at the Norwalk Superior Court on probable cause for the execution of the inspection warrant **without** the 24 hour advanced notice and asked the court to enjoin City of La Habra Heights from executing the pending inspection warrant. The Norwalk Superior Court judge quashed the warrant obtained through fraud.  Subsequently, in 2020, the Honorable John A.

Torribio reprimanded the City for not following his order. This made the City Employees more angry.

6. The inspection warrant was finally executed on 08/06/2018, with the 24 hour advanced notice. After the inspection, City employees concluded that Plaintiff had added rooms without City's permits. They told Plaintiff to bring the house back to its original condition.

7. The City is now trying to justify its egregious behavior. The truth is, early on or about 03/04/2005, Plaintiff made a simple request to obtain the original plans/blueprints from the City of La Habra Heights in order to improve the house. He was told that there were no original plans/blueprints of this house. The City misplaced, destroyed, or lost the records on file, including the original plans/blueprints.  Hence, Plaintiff was unable to bring back the house to the original condition.  And now the City demands that Plaintiff bring the house to its original standards.  That is an impossibility due to fraud, negligence or both, the original plans/blueprints have been destroyed by the City.

**B   Eviction Without Exigency and Rejection of Working Out a Solution**

8.  Three weeks after the Inspection, on or about 08/28/2018, City employees posted on Plaintiff's front door a notice with the words "UNSAFE BUILDING," "DO NOT ENTER AND OCCUPY," and "This Property is ordered vacated by the City of La Habra Heights Building official", a bully (illegal) tactic.

9. On the same day, at noon time, the City Building Inspector Michael Moore told Plaintiff: "We just came back from a house where part of the drywall had to be removed. It happens all over here in the Heights. **You are not the only one. We will work out with you**."

10.  On 09/04/2018, Building Official Scott Fazekas brought Assistant Manager Rafferty Wooldridge, the City Attorney, a Locksmith, Community   Development Department Coordinator Nicholle Hornsby, the Fire Marshal, Assistant fire Chief, and the Sheriff to Mr. Lopez's house and disconnected the electricity.  At the same day, Mr. Lopez heard the Community Development Department Coordinator Nicholle Hornsby advise and pointed to the house's electricity panel to the Building Official Scott Fazekas. Nicholle Hornsby asked Scott Fazekas "Do you need the panel open?"  "Are you going to examine the panel?"  To which, Mr. Fazekas stated, "That won't be necessary, I've seen enough". At no time did any of the City's building officials examine or use any type of electrical meter or amp meter to examine the residence's electrical panel. Scott Fazekas cut off Plaintiff 's electricity on the property 1550 Vista Del Valle Way. Nevertheless, Plaintiff Louie was expelled from his home during the pandemic which was one of the hardest times to be without a home with the stay-at-home order that was mandatory for residences.

In fact, there was no exigency to justify the eviction, and the City had never given Plaintiff a chance to contest or appeal the City's decision before taking such a drastic action.

11. The City and its employees also never actually "worked out" a solution with Plaintiff after the eviction as Building Inspector Michael Moore verbally promised. Even though Plaintiff tried his best to work out a solution with the City, City employees never gave Plaintiff's efforts consideration. On or about 09/15/2018, 01/14/2019, 06/12/2019 and 11/26/2019, Plaintiff's architect, Ernie Ybarra, paid the City four visits and talked to the City Assistant Manager Rafferty Wooldridge twice with no effect. On 01/21/2020, Plaintiff brought Richard Lara,

a licensed contractor, to the City to discuss the case, but the contractor was also sent away by Rafferty Wooldridge. Plaintiff feels no matter how hard he tried to ask the City for a solution, he was always turned down. The only explanation is: The City chose not to work out a solution with the Plaintiff. On the contrary, if the resident was white, the city will work out a solution with those regulation violators. Now,  instead of trying to help the Plaintiff out like the City officials would for any other white regulation violator and ended up oppressing and bankrupting the Plaintiff. (See C, below)

**C  Imposing an Oppressive and Extortionate "Code of Compliance Agreement" (Brandon Sanchez)**

12. Instead of working out a solution with Plaintiff, the City and its employees tried to further oppress and deprive the Plaintiff. On or around 02/08/2020, City Attorney Brandon Sanchez sent "Code of Compliance Agreement" to Plaintiff. This Agreement was unilateral prepared by the City with unreasonable terms unacceptable to Plaintiff. It imposed administrative costs in the amount of $16,000 and the so-called "reasonable attorney fees" in the amount of $37,406.98, totaling the Code Enforcement Costs at $53,406.98. Furthermore, it stipulates that the Code Enforcement Costs shall constitute a lien on the Subject Property.

13. Plaintiff has never been informed how the administrative costs ($16,000) were accrued, and the "reasonable attorney fees" ($37,406.98) were a sham. This is not a solution but extortion. Plaintiff and the co-owner of the house at issue, Joel Lopez, both refused to sign the Agreement.

**D  Threatening court action if Plaintiff did not voluntarily consent to the inspection**

14. On or about 07/16/2020, City Attorney Brandon Sanchez representing the City sent Plaintiff a "Request for Consent to Inspect Property." Brandon Sanchez threatened court action if Plaintiff did not voluntarily consent to the inspection. (Plaintiff offered no consent because there was no exigency to legitimize a second inspection as Plaintiff had already been evicted since 09/04/2018).

**E The Second Inspection without Proper Notice or Legal Reason**

15. As the extortionate Code of Compliance Agreement did not work out for the City, The City attorneys **Michael Maurer and Brandon Sanchez** obtained another "24 Hour Notice of Inspection" Warrant from the court on 08/05/2020.

16. Again, there was no proper 24 hour advanced notice. The "24 Hour Notice of Inspection" was put on the front door of the **empty** house on 08/12/2020. As Plaintiff had been evicted from the house for about 2 years, he had no way to see it. The City knew or should have known that this was not a proper way to send Plaintiff a notice required by the law. The City attorneys Michael Maurer and Brandon Sanchez should have sent the 24 hour advanced notice by mail to Plaintiff's address or called Plaintiff to inform him, instead of putting the notice on the front door of an empty house.

17. A neighbor saw the Notice on the front door of Plaintiff's house and informed Plaintiff at 3PM on 08/12/2020. At 5PM of that date, Plaintiff asked his relative Wen-Tzu Davis, a.k.a. Wendy Davis to call and inform City Assistant Manager Rafferty Wooldridge immediately that there would be an ex parte hearing next morning at 8:30 am at Norwalk Superior Court against the execution of the said inspection. Rafferty Wooldridge responded to the call, saying "I will notify the City Attorney."

18. The City attorney did not attend the hearing on the morning of 08/13/2020. The Judge, Honorable John A. Torribio, ruled without the City's presence (default) at 8:50 a.m.: "THE CITY IS REQUIRED TO GIVE 24 HOUR NOTICE and the inspection shall be conducted between 9 a.m. to 5 p.m. on a weekday." After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way from the Norwalk Superior Court on 08/13/2020 around 9:50 am to confront the City Officials with the ex parte ruling.  However, City Attorney Brandon Sanchez and Building Official Scott Fazekas, along with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby already completed the execution of the second inspection warrant on Mr. Lopez's property **without** the 24 hour advanced notice required by the Judge Torribio.  Their actions were in direct violation of the Judge's order. This is exactly how the City acts, outside of the law.

19.   Some employees lied creating false claims about the Plaintiff. One employee, who is their star witness, Assistant Fire Chief for the City of La Habra Height, Timothy Peel. On 8/13/20, at approximately 09:50 am, the City Attorney did not attend the hearing, instead they were executing a second inspection while the Plaintiff was at court filing the ex parte and without the Judge's approval. Brandon Sanchez and Scott Fazekas led the second inspection along with the City Employees Rafferty Wooldridge, Nicholle Hornsby and Timothy Peel (who has a **Felony charge on 01/27/2022**, see below). After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way from the Norwalk Superior Court on 08/13/2020 around 9:50 am to confront the City Officials with the ex parte ruling. After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way from the Norwalk Superior Court on 08/13/2020 around 9:50 am to confront the City

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

Officials with the ex parte ruling.  However, City Attorney Brandon Sanchez and Building Official Scott Fazekas, along with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby already completed the execution of the second inspection warrant on Mr. Lopez's property **without** the 24 hour advanced notice required by the Judge Torribio (Paragraph 18).

As soon as he got to 1550 Vista Del Valle way he made contact with City officials from La habra Heights who were already on the property, by the pool equipment located on the lower part of the property. The Plaintiff was faced and greeted by the Assistant Fire Chief Timothy Peel (a.k.a Tim Peel) of La Habra Heights Fire Department. The Plaintiff received a disdainful look from behind his glasses as he approached the Plaintiff in a provocative manner in an attempt to escalate the situation. It should be noted that two years later (01/27/2022), Timothy Peel would be charged with felony counts of impersonating a police officer.  It should be obvious what his intentions were when he approached the Plaintiff on that dreadful day. The Plaintiff proceeded to turn his back to Timothy Peel and unlocked the pool equipment as directed by Scott Fazekas. Nicholle Hornsby, Rafferty Wooldridge and Fireman Robert Montaghami and the Plaintiff were positioned behind Timothy Peel. The Plaintiff advised the group, City Attorney Brandon Sanchez and Building Official Scott Fazekas, along with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby; that they were illegally searching Plaintiff's property. They ignored the court hearing scheduled for that morning at Norwalk Superior Court; Plaintiff did not receive a response from the city officials.  It should be noted that this is not the first run in with Assistant Fire

Chief Timothy Peel' s bully type tactics. In one of Plaintiff's meetings with Rafferty Wooldridge; Plaintiff asked him what was the name of the Fireman that was being a bully, to which Rafferty Wooldridge replied "Timothy Peel." It should also be noted that during a conversation with Scott Fazekas, Plaintiff asked him about the plans/blueprints that the Plaintiff had submitted to the city two years prior; to which Scott Fazekas replied he has not seen a pair of plans/blueprints come across his desk. Plaintiff advised Scott Fazekas that Nicole Hornsby made a copy of them.

The Plaintiff proceeded with the officials; as the Plaintiff and all the City officials that were present at the scene walked up the incline driveway with the garage behind them; they came across a repaired waterline and Plaintiff advised the city planner Scott Fazekas how the broken water pipe was repaired, at this point Mr. Louie Lopez heard Assistant Fire Chief Timothy Peel tell him (the Plaintiff) in a clear voice "good luck in getting a permit". To add insult to injury, as the city management team left on a city assigned Toyota white Prius, Assistant Fire Chief Timothy Peel and Robert Montaghami waited on the top of the driveway in an unmarked white SUV to further intimidate/demoralize the Plaintiff. It appears that they were providing security for the locksmith; where none was needed. The city of La Habra Heights were working very closely with Timothy Peel who should have known of his bully, unpredictable type behavior; it appears to be Rafferty Wooldridge who is his right hand man. The Plaintiff first experienced his bully type behavior when Timothy Peel was with Rafferty Wooldridge while questioning teenagers in the parking lot of Plaintiff's property. Timothy Peel was showing a small type badge to Plaintiff and the teens that he was questioning. It should be noted, on 1/27/22, Assistant Fire Chief Timothy was arrested by the

Los Angeles Sheriff's Department Norwalk station under booking number 6314629 for impersonating a Police Officer. It's alleged that Peel modified a City or personal Vehicle with emergency lights and sirens and pulled over and detained citizens from the surrounding cities of Whittier and it's adjacent neighbors. The case was referred to the Sheriff's public corruption unit and subsequently to the Los Angeles County District Attorney's Office.

20. Twice the City and its employees' disregard of proper legal procedure is a puzzle for Plaintiff. Is it the arrogance of power? Is it the usual way of their behavior in dealing with ordinary people? How dare they disregard an ex parte hearing? How could they execute the inspection warrant without following legal procedures? For Plaintiff, not following legal procedure is the City and its employees' way of behavior to show power. As Plaintiff understands, legal procedures are a means to protect people's rights, ignoring procedural rules and the court ruling shows that the City and its employees' disregard of people's rights.

**F  No Solution**

21. Plaintiff actually proposed a solution to the City. As the City ordered the eviction based on "unsafety" of the house, Plaintiff maintained that the "unsafety" was much exaggerated. It is fair and just to ask a third party to inspect the house, and the conclusion of the proposed inspection will serve as the basis for a solution. On 2/14/2020, Plaintiff filed a Complaint entitled "Solicitation, Scam & Conspiracy" to the State Bar of California through email; meanwhile, Plaintiff sent a copy of the complaint to the City, in which Plaintiff proposed that the

Department of Regional Planning of Los Angeles County be the third party to perform the inspection. The City never responded to this proposal.

22. Instead, the City executed the second inspection on 08/13/2020. After the second inspection, Scott Fazekas, Building Official in the Building and Safety Division of City of La Habra Heights, sent "Legal Notice and Order to Repair or Abate" to Plaintiff on 08/24/2020. Plaintiff presented a Plan in response. But Scott Fazekas rejected it by sending Plaintiff "Residential Plan the first Corrections" on 12/10/2020.  Plaintiff presented a second Plan in response.  But Scott Fazekas rejected it again by responding with the second "Residential Plan Correction" on 04/12/2021. So far, no solution has been found, and Plaintiff remains homeless.


**G An Alternative Solution Does Exist, but the City Chose Not to Follow the Proper Policy**

23.  The house at issue is 64-years old in 2020, built in 1957 before La Habra Heights was incorporated on December 4 of 1978 as a city of Los Angeles County. The City's General Plan (May 2004) includes provisions on Nonconforming houses:

> *"Issue - Many of the homes in La Habra Heights were constructed before the City was incorporated  (La Habra Heights was incorporated on December 4, 1978) and were not subject to the development regulations adopted after incorporation. As a result many older homes in the City are nonconforming to current standards that can limit remodeling or improvement option for effected homeowner".*

24. The City's General Plan (May 2004) also provides Policy 23 for Nonconforming Residential Use and Land Use Element, which states:

> *"Permits alterations of nonconforming residential structures so long as the non-conforming residential performance standard is not exacerbated by the requested changes."*

25. Pursuant to Nonconforming Residential Use and Land Use Element Policy 23, the City of La Habra Heights has the obligation to assist Plaintiff to obtain:

    a.   Grandfather in, and/or

    b.  permits.

It is unknown for what reason the City did not follow its General Plan in dealing with Plaintiff's property, unless the City and its employees did not want to give Plaintiff any assistance.

## H  Reasons behind the City and City Employees' Mistreatment to Plaintiff

26. As stated in Paragraph 9, the City Building Inspector Michael Moore told Plaintiff: "We just came back from a house where part of the drywall had to be removed. It happens all over here in the Heights. You are not the only one. **We will work out with you**."  Michael Moore's remarks indicate that the City usually would work out a solution for code violations. But why has the City and its employees treated Plaintiff differently from many other property owners who have violated regulations by never "working out" a solution to help out Plaintiff? There are two reasons why they singled out Plaintiff and imposed excessively oppressive actions on Plaintiff.

27. <u>Reason One : Retaliation</u>

As stated in Paragraphs 3 and 4, City Employees came to Plaintiff's house to execute an inspection warrant **without** the 24 hour advanced notice. Plaintiff and his brother challenged the City's unlawful practice and objected the City and City Employees' authority. The inspection was stopped due to the challenge. From that day on, City employees refused to speak to Plaintiff's attorney brother because

they did not want to deal with someone familiar with the law. They threatened Plaintiff to abandon his attorney, proclaiming never to assist Plaintiff if he had a lawyer. But they did not assist Plaintiff in any way even after his brother who is an attorney was no longer involved. Since the altercation on the day of the aborted first inspection, all the City and City Employees have been punishing Plaintiff under color of public office out of retaliation for his daring challenge to their authority. In the conversation with Sweety Stefani's conversation with Plaintiff on or about 03/19/2020. Sweety Stefani used to be a tenant of Plaintiff's. She described herself as Plaintiff's protector in the City Hall in her "good-will good-bye conversation" with Plaintiff. She told Plaintiff that several individuals in the City management team really hated Plaintiff and his brother; on the contrary she was liked and respected in the City Hall. She further said that the main person that hated him was the City Manager Fabiola Huerta, who even talked to Sweety Stefani to build a case against Plaintiff and proposed that Sweety be an **informant** (emphasis added) to testify against Plaintiff in future court proceedings. She added: "They are trying to get you (Plaintiff) until you lose your house. You have no chance in hell to have any type of relief or assistance while Fabiola Huerta, Michael Moore, and Rafferty Wooldridge are in position." According to her, the only chance for Plaintiff to get assistance from the City is to wait till Fabiola Huerta rotates to another city.

28. Reason Two: Exploiting Plaintiff and Tried to Expropriated His House
It is well-known that the City of La Habra Heights demanded ever growing penalties for building code violations. A good example of the City's reliance on fines is City Mayor's own remarks at the May 2020 municipal administration meeting, which was broadcasted on TV. At this meeting, the City Mayor

mentioned that the City was in shortage of money. He told City Manager Fabiola Huerta to collect the fines imposed on several violation cases. Plaintiff's case must be one of them, for the City just tried to coerce Plaintiff to sign the "Code of Compliance Agreement (Paragraphs 12 and 13)" 3 months ago, on 02/08/2020, which demanded a fine in the total amount of $53,406.98 as a precondition to resolve Plaintiff's case. This amount is an extreme example of how the City tried to exploit and even bankrupt Plaintiff, and imposing a lien on Plaintiff's property is an outrageous intent with the final goal to **EXPROPRIATE** (emphasis added) Plaintiff's house. This severe punishment under the cover of office but out of retaliation also served to fund the City and get **a person of color** (emphasis added) out of his/her beloved City.

**I  Seeking Justice From the Court**

29. As stated above, Plaintiff was wrongly evicted by the City based on exaggerated safety issues (Paragraphs 21) and remains homeless to this day (Paragraphs 8 through 11). Plaintiff prays the court to grant relief so that Plaintiff may go back home to enjoy his normal life.

30. The City and its employees, under the color of office, have punished Plaintiff with extremely unreasonable demands out of retaliation due to Plaintiff and his brother's challenge to the execution of the first inspection warrant back in 2018. Even though the cause event happened in 2018, its ramification has lasted to this day, and Defendants continued to oppress Plaintiff under color of public office in the last 2 years. The City and Employees-Defendants have violated Plaintiff's constitutional rights protected by the First Amendment and Fourteenth Amendment. Plaintiff prays the Court to correct the wrongdoings of Defendants and punish Defendants in accordance.

## IV  CAUSES OF ACTION

31. Comes now Plaintiff Louie unto this Honorable Court respectfully for seeking justice against all the Defendants pursuant to the First Amendment and Fourteenth Amendment of the United States Constitution, 42 USC Section 1983, 18 U.S. Code § 241, 18 U.S. C.§ 242 and 25 CFR § 11.448, California Constitution Article 1 Section 1, and other applicable laws.

32. Whenever in this First Amended Complaint reference is made to any act of Defendants, allegations shall be deemed to mean all named Defendants who are officers, agents, managers, representatives, employees, assignees of the City of La Habra Heights, who authorized and/or did such acts while actively engaged in the operation, management, direction, 18 U.S. C.§ 242 or control of the affairs of Defendants.

33. At all times herein mentioned and with respect to the specific matters alleged in this First Amended Complaint, Plaintiff is informed and believes that each Defendant is the agent, employee, employer of each of the remaining defendants and/or vice versa. In addition, Plaintiff is informed and believes and on such basis alleges that the defendants named herein, and each of them, are responsible in some manner for the acts herein alleged, and each of the named defendants directed, ratified, approved, abetted, aided, and jointly collaborated with each of the remaining defendants in committing the acts herein alleged, and failed to prevent such acts from happening while having the power and duty to do so, with full knowledge of the said acts.

34. Plaintiff is informed, believes and on such basis alleges that each of the named defendants was acting under color of office and law in committing the acts

herein alleged, and in doing so, defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

### Claim One     Violation of Federal Civil Rights

**Against City of La Habra Heights and
Fabiola Huerta, Rafferty Wooldridge,
Michael Moore, Michael Maurer and Brandon Sanchez
(Proposed Defendant) Scott Fazekas and
(Proposed Defendant) Timothy Peel**

35. Plaintiff realleges and incorporates herein as if set forth in full, each of the foregoing paragraphs.

36. Plaintiff has a claim under 42 U.S.C. 1983 for violation of federal constitutional and/or statutory Civil Rights.

37. The City of La Habra Heights and City Employees-Defendants targeted Plaintiff based on exaggerated code violations. Normally, code violations are, and could be, resolved by the City's usual "work out solutions" practice (Paragraphs 9, 11 and 26), or by following the Nonconforming Residential Use and Land Use Element Policy 23 as stated in Paragraphs 23 through 25. The City Employees-Defendants, however, chose to use drastic oppressive measures to evict Plaintiff from his house (from 09/04/2018 continuing to this day, more than 1255 days). Furthermore, the City and its employees-defendants imposed an extortionate "Code of Compliance Agreement" upon Plaintiff（02/08/2020）with the malicious intent to squeeze $53,406.98 from Plaintiff and even to control Plaintiff's property with a lien. (Paragraphs 12 and 13).  Defendants also executed a second inspection (08/13/2020) without exigency (Paragraphs 16 through 19) to justify it as Plaintiff was evicted two years ago.

38. Moreover, the City and its employees-defendants had never given Plaintiff a chance to contest or appeal the City's decisions before taking the drastic actions mentioned in the above paragraph.

39. In fact, around noon time on or about 08/28/2018, City Building Inspector Michael Moore told Plaintiff that they just came from a house where part of the drywall had to be removed to expose the framing. Michael Moore said to Plaintiff: "**It happens all over here in the Heights; you are not the only one. We are going to work out with you,** Mr. Lopez (Paragraph 9)."  This remark indicates that violations happened "all over here in the Heights," and the City usually would "work out solutions" with code violators. The City, however, never worked out a solution with Plaintiff (**a person of color**). Defendants actually rejected Plaintiff's every effort to work out a solution. (Paragraphs 11, 21, and 22).

40.  Since the City's first inspection on Plaintiff's property in July of 2018, City Employees-Defendants refused to talk to Plaintiff's brother with the excuse that he was an attorney. Building Inspector Michael Moore used to say to Plaintiff: "You want to use an attorney? Then we can't help you at the front desk." After Plaintiff's brother stopped accompanying him to the City Hall, however, the staff at the City Building Department still refused to speak to Plaintiff or help him in any way. Plaintiff was simply ignored.  On or about 09/15/2018, 01/14/2019, 06/12/2019 and 11/26/2019, Plaintiff's architect, Ernie Ybarra, paid the City four visits and talked to the City Assistant Manager Rafferty Wooldridge twice with no effect (Paragraph 11).  As late as 01/21/2020, Plaintiff brought Richard Lara, a licensed contractor, to the City, trying to discuss a solution, but the contractor was also sent away by City Assistant Manager Rafferty Wooldridge. The City and its

employees-defendants' refusal to work out with Plaintiff shows that Defendants have held a grudge with Plaintiff ever since the first inspection back in 2018 (Paragraphs 4 and 27) and decided not to treat Plaintiff as they would usually do with other code violators.  This is discrimination based on retaliation.

41**.** There is no rational basis for La Habra Heights City and all herein mentioned Employees-Defendants to have treated Plaintiff differently by

    a)  not working out a solution and/or by not following the Nonconforming Residential Use and Land Use Element Policy 23 regulating houses built before the establishment of the City (Paragraphs 23 through 25);

    b)  by a series of drastic actions stated in Paragraphs 37 above.

42. A house at 1152 Picaacho Drive in La Habra Heights City with an added structure, an observatory tower (actually a concrete gazebo) about 150 square feet and two floor height with a single supporting column. This structure looks so weird that it does not fit into the environment. If the City and its employees considered such a structure having met the code requirement and permitted such a structure to be there, they have two different standards, the unreasonably strict one being applied to Plaintiff.  This is another fact of discrimination.

43. Retaliation was proved by Sweety Stefani's good-bye conversation with Plaintiff on or about 03/19/2020 (Paragraph 27).  She told Plaintiff that the team members in the City hall hated Plaintiff, and as long as City Manager Fabiola Huerta, City Assistant Manager Rafferty Wooldridge, and Building Inspector Michael Moore are in the City Hall, Plaintiff had no chance to get any relief.

44. Out of retaliatory motivation, Defendants singled out Plaintiff as a target of oppression and exploitation due to Plaintiff's exercise of his constitutional right by challenging their execution of the first inspection warrant **without** the 24 hour

advanced notice and the second inspection warrant was also **without** the 24 hour advanced notice (08/13/2020, Paragraphs 16 through 20). Thus, all Defendants violated Plaintiff's right protected by the First Amendment of the U.S. Constitution.

45. As stated L.A. times article on 02/04/2022, title: "Wealthy town has an answer against building affordable housing: Mountain lions - Los Angeles Times (latimes.com)", https://www.latimes.com/homeless-housing/story/2022-02-04/well-heeled-town-affordable-housing-mountain-lions, which states:

"….College towns have attempted to do the same with student dorms. And then, there was La Habra Heights, in Los Angeles County, which asked to be exempted from planning for affordable housing because the city claimed it was too hilly for apartments." This is not an affordable housing in the City of La Habra Heights. It is a type of segregation and shows a pattern of discrimination.

46. All defendants also violated Plaintiff's equal protection right guaranteed by the 14th Amendment to the US Constitution when they singled out Plaintiff as a target of retaliation and exploitation and treated Plaintiff differently from other code violators as stated in Paragraphs 37 through 44.

47. Plaintiff' has been harmed as a direct result of the above-mentioned Defendants' discriminating and retaliatory acts stated in Paragraphs 37 through 44. Plaintiff has not been able to live in his own home for 3 and half years, suffered homelessness during an especially difficult time in a pandemic, not to mention emotional distress and financial loss.

48. All defendants are responsible for Plaintiff's suffering, for all of them, and each of them, were involved in the acts violating Plaintiff's Constitutional rights.

49. In her contract with the City, **Defendant Fabiola Huerta**, as City Manager, her job description includes: directing and supervising the administration of the City; exercising supervision over all municipal employees directly or through subordinate supervisors. Defendant Fabiola Huerta must be involved in the City's decisions to single out and punish Plaintiff with retaliatory acts. Following are the supporting facts:

a) The initial person who complained to the City about Plaintiff's violation is Sweety Stefani. According to what he told Plaintiff in her "good-bye" conversation on or about 03/19/2020 (Paragraph 27).  Fabiola Huerta was the one who hated Plaintiff most. She even talked to Sweety Stefani to build a case against Plaintiff and proposed that Sweety be an **informant** (emphasis added) to testify against Plaintiff in future court proceedings. Stefani added: "They are trying to get you (Plaintiff) until you lose your house. You have no chance in hell to have any type of relief or assistance while Fabiola Huerta, Michael Moore, and Rafferty Wooldridge are in position." According to her, the only chance for Plaintiff to get assistance from the City is to wait till Fabiola Huerta rotates to another city. (Paragraph 27).

b) Fabiola Huerta answered to the Mayor at the May 2020 municipal administration meeting, which was broadcasted on TV, when he asked her to collect fines from code violation cases, that she would see to it. (Paragraph 28). Plaintiff's case is one of such cases, for Plaintiff was just imposed a fine in the amount of $53,406.98 by the City through the "Code Compliance Agreement" produced in February.

c) Fabiola Huerta also signed the oppressive and extortionate "Code of Compliance Agreement" together with City Attorney Michael Maurer (Paragraphs 52 a).

Based on the above facts, Plaintiff is informed and believes that Defendant Fabiola Huerta has been deeply involved in Defendants' systemic retaliatory acts against Plaintiff, possibly playing a major role, hence violated Plaintiff's rights protected by the 1st and 14th Amendments to the US Constitution.

50. **Defendant Rafferty Wooldridge** is the City Assistant Manager.  He joined with Building Inspector Michael Moore to lead the first inspection and was confronted by Plaintiff and his brother. Ever since, he held a grudge against Plaintiff (Paragraphs 4, 27, 40). Again, on 08/13/2020, he joined with City Attorney Brandon Sanchez and Building Official Scott Fazekas to lead the second inspection (Paragraphs 16 through 19). The following facts (a-e below) show Defendant Rafferty Wooldridge's involvement in the retaliatory acts against Plaintiff.

a) After the initial inspection, Rafferty Wooldridge refused to talk to Plaintiff when accompanied by his brother attorney to the City Hall. Even after Plaintiff dropped his attorney brother, Rafferty Wooldridge continued to ignore Plaintiff.  He actually ignored Plaintiff's every effort to "work out" a solution. When Plaintiff entrusted his architect and licensed contractor to talk to Rafferty Wooldridge for a solution back in 06/12/2019, 11/26/2019, and on 01/21/2020, he did not listen to them at all but simply sent them away. (Paragraph 11)

b) It was Rafferty Wooldridge, who in February of 2020 told Plaintiff that Plaintiff must sign the extortionate Code Compliance Agreement before Plaintiff could get any assistance from the City.

c) Rafferty Wooldridge, as City Assistant Manager, is the one who played a major role in the decisions and acts to single out Plaintiff by not working out with Plaintiff as the City usually would do with most code violators and also by punishing Plaintiff out of retaliation. This is also proved by Sweety Stefani's "good-bye" conversation to Plaintiff on or about 03/19/2020, in which she said: "They are trying to get you (Plaintiff) until you lose your house. You have no chance in hell to have any type of relief or assistance while Fabiola Huerta, Michael Moore, and Rafferty Wooldridge are in position (Paragraph 27).

d) Furthermore, on the day before the second inspection (08/12/2020), Plaintiff asked his relative Wendy Davis to inform Rafferty Wooldridge at 5 pm that there would be an ex parte hearing tomorrow morning at 8 am against the inspection. Rafferty Wooldridge responded that he would let the City Attorney know. But the City Attorney Brandon Sanchez did not attend the hearing.

e) After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way from the Norwalk Superior Court on 08/13/2020 around 9:50 am to confront the City Officials with the ex parte ruling.  However, City Attorney Brandon Sanchez and Building Official Scott Fazekas, along with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby already completed the execution of the second inspection warrant on Mr. Lopez's

property **without** the 24 hour advanced notice required by the Judge
Torribio (Paragraph 18).

Based on the above facts, Plaintiff is informed and believes that Defendant Rafferty
Wooldridge was actively involved in all the wrongdoings against Plaintiff, and,
thus, violated Plaintiff's rights protected by the 1st and 14th Amendments to the U.S.
Constitution.

51. **Defendant Michael Moore** is the City Building Inspector. Facts of his
involvement in the retaliatory acts against Plaintiff is listed below (a-d)

a) Michael Moore was the one who led the first inspection together with City
Assistant Manager Rafferty Wooldridge and got into an argument with
Plaintiff and his brother who challenged them because they executed the
inspection warrant **without** the 24 hour advanced notice required by the
court, which is equivalent to intrusion. Therefore, Michael Moore has held
a grudge against Plaintiff ever since. (Paragraphs 4, 27, 40).

b) In Michael Moore's contract with the City, his job description includes
reviewing plans and issuing permits. He should answer the question why
the City does not follow the provisions of its General Plan (May 2004) on
Nonconforming houses. (Paragraphs 23 through 25).

c) Michael Moore told Plaintiff that violations happened all over in the
Heights, and Plaintiff was not the only one; he promised that "**We will
work out with you**" (Paragraph 9). However, Michael Moore later joined
the other defendants to retaliate against Plaintiff, for he never worked out
with Plaintiff as he promised.

d) The individuals in the City Hall who hated Plaintiff include Michael
Moore. So did Sweety Stefani inform Plaintiff in her "good-bye"

conversation with Plaintiff on or about 03/19/2020. ("…You have no chance in hell to have any type of relief or assistance while Fabiola Huerta, Michael Moore, and Rafferty Wooldridge are in position (Paragraph 27). Based on the above facts, Plaintiff is informed and believes that Defendant Michael Moore was also involved in the wrongdoings against Plaintiff stated in Paragraphs 36 through 51 and violated Plaintiff's rights protected by the 1st and 14th Amendments to the US Constitution.

52. **Defendants Michael Maurer and Brandon Sanchez** are City attorneys who provide legal advice and services to the City. Their review of legal issues should have ensured that recommendations, policies, and administrative procedures are undertaken after consideration of sound professional advice. The fact is: they did not do so. Instead, they joined the other City Employees-Defendants to punish Plaintiff with retaliatory measures. Below are the supporting facts.

 a) The above-mentioned two City Attorneys were involved in the producing of the notorious CODE COMPLIANCE AGREEMENT (Paragraphs 12 and 13), as Michael Maurer signed the said Agreement, together with City Manager Fabiola Huerta, on 02/08/2020 (Paragraphs 49 c).

 b) The two defendants drafted the extortionate Code of Compliance Agreement so that they could collect fees in the unreasonable amount of $37,406.98, which is a scam.

 c) It was City Attorney Brandon Sanchez who represented the City to send Plaintiff a "Request for Consent to Inspect Property" on or about 07/16/2020. He threatened court action if Plaintiff did not voluntarily consent to the inspection (Paragraph 14). Plaintiff offered no consent

because there was no exigency to legitimize a second inspection as Plaintiff had already been evicted since 09/04/2018 (Paragraphs 16 through 19).

d) As stated in Paragraph 15, Defendants Michael Maurer and Brandon Sanchez, as City Attorneys, obtained the second Inspection Warrant from the court on 08/05/2020 while there was no exigency to legitimize. These coercive tactics have continued throughout this illegal harassment (Paragraphs 16 through 19).

e) City Attorneys may also provide for appropriate representation for the city in all legal proceedings, so they should have known better that inspection without proper notice is a violation. City Attorneys should have sent the 24 hour advanced notice by mail to Plaintiff's address or called Plaintiff to inform him, instead of putting the notice on the front door of an empty house (Paragraphs 16).

f) As stated in Paragraph 18, The City attorneys ignore simple summons to attend the ex parte hearing at Norwalk Superior Court in the morning of 08/13/2020. Their failed attendance, seemingly suggesting they are above the law.

g) After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way from the Norwalk Superior Court on 08/13/2020 around 9:50 am to confront the City Officials with the ex parte ruling. However, City Attorney Brandon Sanchez and Building Official Scott Fazekas, along with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby already completed the execution of the second inspection warrant on Mr. Lopez's

property **without** the 24 hour advanced notice required by the Judge
Torribio (Paragraph 18).

Based on the above facts, Plaintiff is informed and believes that the two City
Attorneys were involved in the wrongdoings against Plaintiff, not merely by
doing their job as City attorneys but also by being involved in making decisions,
especially in producing the extortionate Code Compliance Agreement, to punish
Plaintiff by drastic actions. Thus, the two herein mentioned defendants violated
Plaintiff's rights protected by the 1st and 14th Amendments to the US
Constitution.

53. **(Proposed Defendant) Scott Fazekas:** Below are the supporting facts.

a) On 09/04/2018, Building Official Scott Fazekas refused examine or use
any type of electrical meter or amp meter to examine the residence's
electrical panel. Scott Fazekas cut off Plaintiff 's electricity on the property
1550 Vista Del Valle Way on 09/04/2018 (Paragraph 10).

b) On 08/13/2020, City Building Official Scott Fazekas was the one who led
the second inspection along with City Attorney Brandon Sanchez.

c) After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way
from the Norwalk Superior Court on 08/13/2020 around 9:50 am to
confront the City Officials with the ex parte ruling.  However, City
Attorney Brandon Sanchez and Building Official Scott Fazekas, along
with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty
Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby already
completed the execution of the second inspection warrant on Mr. Lopez's
property **without** the 24 hour advanced notice required by the Judge
Torribio (Paragraph 18).

d) The plaintiff has brought a pair of plans/blueprints and had Nicole Hornsby made a copy of them for Scott Fazekas. Scott Fazekas replied he has not seen a pair of plans/blueprints Plaintiff had submitted to the city two years prior come across his desk (Paragraph 19).

e) Scott Fazekas, Building Official in the Building and Safety Division of City of La Habra Heights, sent "Legal Notice and Order to Repair or Abate" to Plaintiff on 08/24/2020.

f) Scott Fazekas rejected Plaintiff presented a Plan by sending Plaintiff the first "Residential Plan Corrections" on 12/10/2020 (Paragraph 22)

g) Scott Fazekas rejected it by sending Plaintiff the second "Residential Plan Corrections" on 04/12/2021 (Paragraph 22)

h) With all these rejections (from 53 f through h) The City and its employees-defendants' have shown refusal to work out a solution with Plaintiff.

54. **(Proposed Defendant) Timothy Peel:** Below are the supporting facts.

a) After the ex parte ruling the Plaintiff went to 1550 Vista Del Valle way from the Norwalk Superior Court on 08/13/2020 around 9:50 am to confront the City Officials with the ex parte ruling.  However, City Attorney Brandon Sanchez and Building Official Scott Fazekas, along with Assistant Fire Chief Timothy Peel, City Assistant Manager Rafferty Wooldridge, Fireman Robert Montaghami and Nicholle Hornsby already completed the execution of the second inspection warrant on Mr. Lopez's property **without** the 24 hour advanced notice required by the Judge Torribio (Paragraph 18).

b) It should be noted that this is not the first run in with Assistant Fire Chief Timothy Peel's bully type tactics (Paragraph 19), *infra*.

55. All the above-named defendants have been involved in the systemic retaliatory acts against Plaintiff by singling out Plaintiff and punishing Plaintiff under the color of office. These actions are at the Center of this Lawsuit.  Yet, defendants' actions against Plaintiff are not merely discretionary but with personal intent not allowed in executing public duties. The fact is, instead of resolving the issue by working out a solution, City and Employees-Defendants ordered to evict Plaintiff (even though the eviction began in 09/04/2018, it has lasted to this day), and imposed a Code Compliance Agreement (Paragraphs 12 and 13) on Plaintiff with a fine in the amount of $53,406.98. It is unreasonable, intentional, excessive, and without basis, with the pure intention to bankrupt Plaintiff and to expropriate Plaintiff's property by forcing a lien. Thus, Defendant City of La Habra Heights is not protected by discretionary immunity.

56. What the attorneys for the City resorting threats are just another example of the discriminatory actions by the City.  Please see below.

57.  Since the Plaintiff refused to sign the above-mentioned Agreement, the City of La Habra Heights and Employees-Defendants resorted to the following: their usual playbook: harass and that equals, surprise, another "INSPECTION". On or about 07/16/2020, City Attorney Brandon Sanchez representing the City sent Plaintiff a "Request for Consent to Inspect Property." Brandon Sanchez threatened court action if Plaintiff did not voluntarily consent to the inspection (Paragraph 14). [Plaintiff offered no consent because there was no exigency to legitimize a second inspection as Plaintiff had already been evicted since 09/04/2018.]

58. Defendants' formal, regulatory and proscriptive actions, including but not limited to the imposing of the Code Compliance Agreement and the second

inspection, and their informal, coercive actions, including but not limited to refusing to discuss a solution and City Attorney Brandon Sanchez's threat of court action, had a chilling effect on Plaintiff, which are aimed to deter plaintiff from continuing to exercise his rights and seek equal protection and force Plaintiff to succumb to defendants' power. Therefore, Defendants' behavior violates Plaintiff's Constitutional right protected by the 1st Amendment.

59. There is no rational basis for La Habra Heights City and all above-mentioned City Employees-Defendants to have treated Plaintiff by taking excessive acts against Plaintiff instead of working out a solution and/or by not following the Nonconforming Residential Use and Land Use Element regulating houses built before the establishment of the City (Paragraphs 23 through 25, Paragraphs 37 and Paragraphs 41). The wrongful and excessive conduct of the City and City Employee-Defendants, each of them, was intentional, with malice, oppression, and reckless disregard to the rights of Plaintiff, motivated by an evil intent, that is retaliation. In a word, retaliation is the driving force of all defendants' wrongdoings against Plaintiff,

60. Plaintiff' has been harmed due to Defendants' retaliatory acts stated above. As a direct result of Defendants' violation of Plaintiff's civil right, Plaintiff has not been able to live in his own home for 3 and half years (more than 1255 days) and have suffered, and will continue to suffer homelessness in an especially difficult time period in a pandemic, not to mention emotional distress such as anxiety and anguish, among other things, as well as financial difficulties.

61. Based on the above, the wrongful and malicious acts of all defendants named in this claim were substantial factors in causing damage to Plaintiff. Therefore, Plaintiff is entitled to an award of damage.

62. By these actions, City Employees Defendants interfered and/or attempted to interfere with Louie's life which is constitutionally protected liberty interests, and did so without excuse or justification. These acts exceeded the bounds of common decency usually tolerated by a civilized society.

63. Plaintiff is informed and believes that City Employees Defendants, and each of them, intended to cause harm to Plaintiff, or acted with reckless disregard for the possibility that Plaintiff would suffer extreme emotional distress as a result of the outrageous conduct listed above.  City Employees Defendants knew of Plaintiff's susceptibility to injuries through mental distress in order to inflict trauma; and/or they acted intentionally or unreasonably with the recognition that the acts were likely to result in illness through mental distress. Said conduct was done with deliberate indifference to the liberty interests of Plaintiff.

64. As the direct and proximate result of the City Employees Defendants extreme and outrageous conduct, Plaintiff have suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in an amount subject to proof at trial. Nobody, including Plaintiff, could reasonably be expected to endure the types of affront inflicted upon Plaintiff without sustaining the type of damages herein alleged.

65. Plaintiff is informed and believes and thereon allege that City Employees Defendants acted knowingly and willfully, with malice and oppression, and with the intent to harm Plaintiff. That City Employees Defendants' wrongful acts above-mentioned were substantial factors in causing plaintiff Mr. Lopez harm. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of

punishing said governmental agents, and to deter them and others from such conduct in the future.

66. City of La Habra Heights is vicariously responsible for the conduct of City Employees, under California Government Code section 815.2 and other applicable statutory and case law.

67. Plaintiff prays the Court to give Plaintiff relief by a judgment so that Plaintiff may be relieved from homelessness.

68. Plaintiff also pray the court to punish the above-mentioned defendants for their excessive, oppressional, and unlawful acts based on retaliation and discrimination.

**Claim Two      Conspiracy**

**Against City of La Habra Heights and Michael Maurer,
Brandon Sanchez, Fabiola Huerta, Rafferty Wooldridge,
(Proposed Defendant) Scott Fazekas**

69. Plaintiff realleges and incorporates herein as if set forth in full, each of the foregoing paragraphs.

70. Plaintiff has a claim under 42 U.S.C. 1983 for violation of federal constitutional and/or statutory Civil Rights.

71. Plaintiff is informed and believes that City Employees-Defendants, and each of them, intended to cause harm to Plaintiff, participated in, conspired with, approved of, and/or abetted the conduct of the remaining culpable parties mentioned herein.

72. As stated in Claim 1, City and City Employees-Defendants violated Plaintiff's rights protected by the 1st and 14th Amendments to the U.S. Constitution by

36

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

discrimination based on retaliation. The City and its Employees-Defendants' overt acts, however, were done with a consorted series of retaliatory actions, including:

a) keeping Plaintiff homeless to this day since 09/04/2018;

b) rejecting to discuss a solution with Plaintiff's architect and contractor on 11/26/2019, and 01/21/2020 (Rafferty Wooldridge, Paragraph 11);

c) telling Plaintiff that he must sign an Agreement before he could get any assistance from the City (Rafferty Wooldridge) in February 2020 (Paragraph 50 b);

d) imposing an extortionate Code Compliance Agreement on Plaintiff with the intention to expropriate Plaintiff's property in the form of a lien on 02/08/2020 (Fabiola Huerta, Michael Maurer, and Brandon Sanchez (Paragraphs 12 and 13);

e) forcing Plaintiff to agree to a second inspection based on no exigency to legitimize (Paragraphs 16 through 19) and threatening court action if Plaintiff did not conform, on 07/16/2020 (Brandon Sanchez, Paragraph 14);

f) conducting the second inspection without proper notice on 08/13/2020 (Brandon Sanchez and Scott Fazekas, Paragraph 18);

g) disregarding Plaintiff's ex parte hearing notice and absence at the hearing on 08/13/2020 (Paragraph 18, Michael Maurer or/and Brandon Sanchez);

h) executing the second inspection without waiting for the judge's ex parte hearing ruling on 08/13/2020 (Brandon Sanchez and Scott Fazekas, Paragraph 18).

Conspirators Michael Maurer and Brandon Sanchez are The City attorneys who provide legal advice and services to the City as stated in Paragraph 52. The City

attorneys Michael Maurer and Brandon Sanchez went to their office and provided legal advice to co-conspirators Fabiola Huerta, Rafferty Wooldridge, Scott Fazekas to execute above overt acts from a to h.

73. Each overt act mentioned in the above paragraph was actually part of a serial of actions aimed at harming Plaintiff. And the overt acts were jointly conspired and carried out by all defendants motivated by retaliation against Plaintiff.

74. Conspiracy is a violation of Federal law, as 18 U.S. Code § 241 provides that

> **"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; …They shall be fined under this title or imprisoned not more than ten years.**

and 18 U.S.C. §242, which provides:

> **"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, … shall be fined under this title or imprisoned not more than one year, or both;…"**

75. A conspiracy is an agreement by two or more persons to commit a wrongful act with common interests and/or intent. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties. The mere acts of coordinated wrongdoings against Plaintiff out of systemic retaliation agreed upon by the above-mentioned defendants are enough to show that defendants' actions are the products of a conspiracy.

76. All the above-mentioned defendants' wrongdoings were committed under color of office but actually conducted under a conspiracy among the said defendants. This is well-proved by Sweety Stefani's conversation with Plaintiff on 03/19/2020, in which she said: "They are trying to get you (Plaintiff) until you

lose your house. You have no chance in hell to have any type of relief or assistance while Fabiola Huerta, Michael Moore, and Rafferty Wooldridge are in position." According to her, the only chance for Plaintiff to get assistance from the City is to wait till Fabiola Huerta rotates to another city (Paragraph 27).

77. A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. Therefore, Plaintiff is not obliged to have further more evidence than what has been stated in the above paragraphs.

78. Plaintiff is informed and believes that without conspiracy among the Employees-Defendants, it would be much more difficult, or even impossible, for them to retaliate against Plaintiff individually with such excessive measures as eviction and extortion, no matter how much grudge each had against Plaintiff.

79. As a result of the above-mentioned defendants' conspiracy, a series of wrongdoings violating Plaintiff's rights protected by the 14th Amendment, as stated in Claim One, were carried out to harm Plaintiff.  The conspiracy among the above-mentioned defendants greatly strengthened defendants' determination and efforts to single out Plaintiff and retaliate against him more forcibly and effectively than any single defendant's retaliatory intent would have accomplished, thus causing greater harm to Plaintiff.

80. Defendants Rafferty Wooldridge and Michael Moore directly contacted Plaintiff and were personally challenged by Plaintiff and his brother at the initiative inspection back in 2018 (Paragraph 4). Based on their behavior toward Plaintiff after that event, it can be easily ascertained that these two defendants showed animus toward Plaintiff, such as refusing to discuss with Plaintiff and his architect and contractor; rejecting all Plaintiff's efforts trying to work out a

solution, singling out Plaintiff to punish him with a staggering fine in the amount of $53,406.98 and a lien with the intent to expropriate Plaintiff's property, etc. It is obvious that the herein mentioned two defendants have held a grudge against Plaintiff and were determined to punish him for his daring challenge (Paragraphs 4, 27, 40). Therefore, it is natural that they had joined hands to retaliate against Plaintiff.  By conspiring with each other and other Employees-Defendants, the herein named two defendants violated Plaintiff's constitutional rights with more determination and efficiency.

81. Defendants Rafferty Wooldridge and Michael Moore, however, are not the only two City employees who conspired to retaliate against Plaintiff.  As the two of them implemented the City's decisions on matters such as inspections and evictions, they must have reported what had happened at the initial inspection (about the challenge and altercation between the two defendants and Plaintiff and his brother) to their supervisor, City Manager, who is in the position to direct them how to respond to Plaintiff's constitutional Fabiola Huerta activity.  She could have advised Rafferty Wooldridge and Michael Moore to put aside their personal grudge and treat Plaintiff equally with other code violators, which is usually to work out a solution. Instead, she did the opposite, that is, to conspire with Rafferty Wooldridge and Michael Moore to retaliate against Plaintiff with a series of drastic acts in order to punish Plaintiff.  Defendant Fabiola Huerta's involvement in the conspiracy is also well proved by Stefani's conversation on 03/19/2020 to Plaintiff (See above Paragraph 27).  Her involvement in the conspiracy was more consequential because she was the director and superior of other defendants involved.

82. **City Attorneys Michael Maurer and Brandon Sanchez** participated in the implementation of a series of retaliatory acts against Plaintiff, with the help of Fabiola Huerta, Rafferty Wooldridge, and Michael Moore.

   a) Defendants Michael Maurer and Brandon Sanchez, as City attorneys, should have provided sound legal advice and services to the City (Paragraph 52). But they did not stop any of the excessive retaliatory actions against Plaintiff taken by the City Employees-Defendants or make any suggestions or recommendations as how to treat Plaintiff fairly. Instead, they joined the series of wrongful actions against Plaintiff.

   b) The above-mentioned two City Attorneys were involved in the producing of the extortionate CODE COMPLIANCE AGREEMENT, and Michael Maurer signed Agreement, together with City Manager Fabiola Huerta, on 02/08/2020 (Paragraph 49 c).

   c) The above-mentioned two defendants drafted the extortionate Code of Compliance Agreement and imposed on Plaintiff the unreasonable amount of legal fees ($37,406.98) in the Agreement (Paragraphs 12 and 13). There was no explanation about how the fee was incurred because it is a scam, which indicates that they have joined the conspiracy with a common interest, to gain big from Plaintiff, illegally.

   d) After Plaintiff refused to sign the above-mentioned Agreement, it was City Attorney Brandon Sanchez who represented the City to send Plaintiff the "Request for Consent to Inspect Property" on or about 07/16/2020. He threatened court action if Plaintiff did not voluntarily consent to the inspection (Paragraph 14). Plaintiff offered no consent because there was

no exigency to legitimize a second inspection as Plaintiff had already been evicted since 09/04/2018 (Paragraphs 16 through 19).

e) As stated in Paragraph 15, Defendants Michael Maurer and Brandon Sanchez, as City Attorneys, obtained the second Inspection Warrant from the court on 08/05/2020 while there was no exigency to legitimize (Paragraphs 16 through 19) because Plaintiff had been evicted since 09/04/2018 and the house was **empty**.

Based on the above facts, Plaintiff is informed and believes that City Attorneys Michael Maurer and Brandon Sanchez, as City Attorneys, were involved in the conspiracy herein alleged.

83. Plaintiff is informed and believes and thereon alleges that the above-mentioned City Employees-Defendants all conspired to harm Plaintiff knowingly and willfully, with malice and oppression.

84. As a result of the above alleged conspiracy, all Defendants have jointly taken a series of retaliatory acts against Plaintiff, and Plaintiff has been harmed by their excessive oppression. Plaintiff has suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity as well as financial difficulty.

85. The series of wrongdoings were substantial factors in causing Plaintiff's harm. Therefore, Plaintiff is entitled to an award of damage.

86. By these actions, above-mentioned City Employees Defendants, interfered and/or attempted to interfere with Louie's life which is constitutionally protected liberty interests, and did so without excuse or justification. These acts exceeded the bounds of common decency usually tolerated by a civilized society.

87. Plaintiff is informed and believes that City Employees Defendants, and each of them, intended to cause harm to Plaintiff, or acted with reckless disregard for the possibility that Plaintiff would suffer extreme emotional distress as a result of the outrageous conduct listed above.  City Employees Defendants knew of Plaintiff's susceptibility to injuries through mental distress in order to inflict trauma; and/or they acted intentionally or unreasonably with the recognition that the acts were likely to result in illness through mental distress. Said conduct was done with deliberate indifference to the liberty interests of Plaintiff.

88. As the direct and proximate result of the City Employees Defendants extreme and outrageous conduct, Plaintiff have suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in an amount subject to proof at trial. Nobody, including Plaintiff, could reasonably be expected to endure the types of affront inflicted upon Plaintiff without sustaining the type of damages herein alleged.

89. Plaintiff is informed and believes and thereon allege that City Employees Defendants acted knowingly and willfully, with malice and oppression, and with the intent to harm Plaintiff. That City Employees Defendants' wrongful acts above-mentioned were substantial factors in causing plaintiff Mr. Lopez harm. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing said governmental agents, and to deter them and others from such conduct in the future.

90. City of La Habra Heights is vicariously responsible for the conduct of City Employees, under California Government Code section 815.2 and other applicable statutory and case law.

### Claim Three  Abuse of Office/Authority

**Against City of La Habra Heights and
Defendants Fabiola Huerta, Rafferty Wooldridge,
Michael Moore, Michael Maurer, and Brandon Sanchez**

91. Plaintiff realleges and incorporates herein as if set forth in full, each of the foregoing paragraphs.

92. Plaintiff 's issue with the City was code violation, which should, and could, have been resolved by cooperative discussions with good faith between the City and Plaintiff.

93. Out of animus and retaliation (See Claim One and Claim Two), the Employees-Defendants herein named treated Plaintiff with a series of unfair and excessive acts against plaintiff, including, but not limited to,

a)  keeping Plaintiff homeless to this day since 09/04/2018 based on exaggerated unsafety of Plaintiff's house (Paragraph 21);

b)  rejecting to discuss a solution with Plaintiff's architect and contractor on 11/26/2019, and 01/21/2020 (Rafferty Wooldridge, Paragraph 11);

c)  telling Plaintiff that he must sign an Agreement before he could get any assistance from the City in February 2020 (Rafferty Wooldridge, Paragraph 50 b), meaning that Plaintiff had to pay $53,406.98 in order to get any assistance from the City (See below d);

d) imposing an extortionate Code Compliance Agreement on Plaintiff with the intention to expropriate Plaintiff's property in the form of a lien on 02/08/2020. (Michael Maurer or/and Brandon Sanchez, and Fabiola Huerta, Paragraphs 12 and 13);

e) forcing Plaintiff to agree to a second inspection based on no exigency to legitimize (Paragraphs 16 through 19) and threatening court action if Plaintiff did not conform, on 07/16/2020. (Brandon Sanchez, Paragraph 14);

f) conducting the second inspection without proper notice on 08/13/2020; ignoring an ex parte hearing filed by Plaintiff, and executing the inspection warrant without waiting for the court's ruling. (Michael Maurer or/and Brandon Sanchez, Paragraph 18);

g) Scott Fazekas, Building Official in the Building and Safety Division of City of La Habra Heights, sent "Legal Notice and Order to Repair or Abate" to Plaintiff on 08/24/2020.

h) Scott Fazekas rejected Plaintiff presented a Plan by sending Plaintiff the first "Residential Plan Corrections" on 12/10/2020 (Paragraph 22);

a) h ) Scott Fazekas rejected it by sending Plaintiff the second "Residential Plan Corrections" on 04/12/2021 (Paragraph 22).

94. Defendants' above-mentioned excessive acts violated 25 CFR § 11.448, which provides:

> *A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor if, knowing that his or her conduct is illegal, he or she:*
>
> *(a)  Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or*

> **(b)  Denies or impedes another in the exercise or enjoyment of any right,**
> **privilege, power or immunity.**

95. Plaintiff is informed and believes that all the facts stated above in Paragraph 93 from a through f infringed Plaintiff's personal rights and property right and, thus, violated 25 CFR11.448. By committing the above listed wrongdoings, all Defendants, and each of them, overstepped their public authority. Each defendant played a role in the City's consorted retaliatory actions against Plaintiff; therefore, each and every one of them is responsible for the violation here mentioned.

96. The City, in fact, has had a policy and practice to "work out a solution" with code violators. They City even has a General Plan (May 2004) including provisions on Nonconforming houses:

> *"Issue - Many of the homes in La Habra Heights were constructed before the City was incorporated (La Habra Heights was incorporated on December 4, 1978) and were not subject to the development regulations adopted after incorporation. As a result many older homes in the City are nonconforming to current standards that can limit remodeling or improvement option for effected homeowner".*

The City's General Plan (May 2004) also provides Policy 23 for Nonconforming Residential Use and Land Use Element, which states:

> *"Permits alterations of nonconforming residential structures so long as the non-conforming residential performance standard is not exacerbated by the requested changes."*

97. The City and its Employees-Defendants did not follow their General Plan that provides protections guaranteed by policy and law, but chose to take drastic actions against Plaintiff. This is a deliberate abuse of office and authority.

98. Back in 2005, on or about 03/04, Plaintiff asked the City about any or all permits issued to the previous owner of Plaintiff's house, so he could know what

had been done to his house and what kind of permit he could get in order to repair and/or improve it.  Plaintiff requested to see the original plans/blueprints. But he was told that the records on file was misplaced, destroyed, or lost. On the same day, the same city employee advised Plaintiff that it was best for Plaintiff not to pursue the past permits, or he would be opening a huge can of worms. Plaintiff did not, and still does not, understand what he meant but feels a tint of threat. Even though this happened in 2005, it helps explain how the City and its employees abuse their power. Loss of official records on file is also malfeasance.

99. As stated in Claim One and Claim Two, all Defendants, and each of them, are involved in the above-mentioned wrongdoings knowingly, willingly, and intentionally, out of malicious animus and retaliation, thus, disregarding that they, as public office holders, had limitation in their power that must not be crossed.

100. Defendants' abuse of office/authority in treating Plaintiff was caused by Plaintiff's exercise of his Constitutional right, namely, challenging Defendants' unlawful execution of the first inspection back in 2018 (**without** the 24 hour advanced notice required by the court). The goal and effect of Defendants' abuse of office/authority is denying and/or impeding Plaintiff's exercise or enjoyment of his right and privilege of owning a home and living a normal life protected by the federal law.

101. Plaintiff has been harmed as a direct result of Defendants' abuse of power and suffered homelessness, retaliation and physical and financial difficulties, as well as various kinds of emotional distress only one who has experienced it can understand.

102. Plaintiff seeks justice from the honorable court to protect Plaintiff by getting rid of Defendants' abusive power so he may return home.

103. Plaintiff also pray that Defendants should be responsible for Plaintiff's damage due to their abuse of office/authority.

104. By these actions, City Employees Defendants, interfered and/or attempted to interfere with Louie's life which is constitutionally protected liberty interests, and did so without excuse or justification. These acts exceeded the bounds of common decency usually tolerated by a civilized society.

105. Plaintiff is informed and believes that City Employees Defendants, and each of them, intended to cause harm to Plaintiff, or acted with reckless disregard for the possibility that Plaintiff would suffer extreme emotional distress as a result of the outrageous conduct listed above.  City Employees Defendants knew of Plaintiff's susceptibility to injuries through mental distress in order to inflict trauma; and/or they acted intentionally or unreasonably with the recognition that the acts were likely to result in illness through mental distress. Said conduct was done with deliberate indifference to the liberty interests of Plaintiff.

106. As the direct and proximate result of the City Employees Defendants extreme and outrageous conduct, Plaintiff have suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in an amount subject to proof at trial. Nobody, including Plaintiff, could reasonably be expected to endure the types of affront inflicted upon Plaintiff without sustaining the type of damages herein alleged.

107. Plaintiff is informed and believes and thereon allege that City Employees Defendants acted knowingly and willfully, with malice and oppression, and with

the intent to harm Plaintiff. That City Employees Defendants' wrongful acts above-mentioned were substantial factors in causing plaintiff Mr. Lopez harm. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing said governmental agents, and to deter them and others from such conduct in the future.

108. City of La Habra Heights is vicariously responsible for the conduct of City Employees, under California Government Code section 815.2 and other applicable statutory and case law.

### Claim Four  Unreasonable Search - Search With a Warrant

### Against City of La Habra Heights and Michael Maurer, Brandon Sanchez, Rafferty Wooldridge, (Proposed Defendant) Scott Fazekas and (Proposed Defendant) Timothy Peel

109. Plaintiff realleges and incorporates herein as if set forth in full, each of the foregoing paragraphs 15 through 19.

110. Plaintiff has a claim under 42 U.S.C. 1983 for violation of federal constitutional and/or statutory Civil Rights.

111. Plaintiff is informed and believes that City Employees-Defendants, and each of them, intended to cause harm to Plaintiff, participated in Unreasonable Search with the extent of the particular intrusion, conspired with, approved of, and/or abetted the conduct of the remaining culpable parties mentioned herein.

The extent of the particular intrusion are as follows:

112. On 08/05/2020, the City Attorneys Michael Maurer and Brandon Sanchez of the law firm BEST BEST & KRIEGER, which are contracted by the City,

represented the City to request to court for an inspection warrant (Paragraph 15). Through deceit, the City obtained this Inspection Warrant. They overstepped their authority by falsely claiming unsafe conditions.  Moreover, they resorted to the court requesting an inspection warrant. The City Attorney Michael Maurer and the City Attorney Brandon Sanchez took away Plaintiff's property without due process by going back to court to obtain inspection warrant.  On 08/05/2020, without any exigency, the City again was granted by the court the "24 Hour Notice of Inspection" (Paragraph 15). This last resort is seldom used, or only used, usually for criminal activity. It would appear, the City Attorneys Michael Maurer and Brandon Sanchez exaggerated the extent of any danger.  It should be noted, Mr. David Lopez was out of the state.

113. On two separate occasions the City and its employees did not follow the legal procedure to execute search warrant to be the extent of the particular intrusion:

    a.) On the first occasion the City failed to provide the 24 hour advanced notice which is required by the law to the Plaintiff.  Michael Moore was the one who led the first inspection together with City Assistant Manager Rafferty Wooldridge and got into an argument with Plaintiff and his brother who challenged them because they executed the inspection warrant **without** the 24 hour advanced notice required by the court, which is equivalent to intrusion. Therefore, Michael Moore has held a grudge against Plaintiff ever since (Paragraphs 4, 27, 40, 51 b).

    b.) On the second occasion there was no exigency to legitimize the inspection as the Plaintiff was evicted two years ago (**Paragraphs 16 through 19**). The City has also ignored an ex parte hearing filed by Plaintiff, and decided to

execute the inspection warrant without waiting for the court's ruling. These coercive tactics have continued throughout this illegal harassment. Brandon Sanchez and Scott Fazekas, Timothy Peel, Rafferty Wooldridge, and other City employees executed the second inspection (08/13/2020) **without** the 24 hour advanced notice required by the court.  The city executed a second inspection without exigency (Paragraphs 16 through 19) The Plaintiff was evicted two years ago, which is equivalent to intrusion.

114.  On top of everything some of the city employees lied in their star witness creating false claims of the Plaintiff. Is it the arrogance of power? Rafferty Wooldridge was told about the hearing and responded that he would let the City Attorney know, the City Attorney did not attend the hearing. Their lack of attendance seemingly suggests they are above the law.  Is it the usual way of their behavior in dealing with ordinary people? Michael Moore made a remark indicating that violations happened "all over here in the Heights," and the City usually would "work out solutions" with code violators. Defendants actually rejected Plaintiff's every effort to work out a solution. As Plaintiff understands, legal procedures are a means to protect people's rights; ignoring procedural rules and the court ruling shows that the City and its employees' disregard of people's rights (Paragraph 20).

115. Plaintiff Lopez claims that Defendant City Attorney Brandon Sanchez, Defendant City Assistant Manager Rafferty Wooldridge, Proposed Defendant Building Official Scott Fazekas, and Proposed Defendant Assistant Fire Chief Timothy Peel carried out an unreasonable search of his home. To establish this claim, Plaintiff Lopez proves the following:

1. That Defendant Brandon Sanchez, Defendant Rafferty Wooldridge, Proposed Defendant Scott Fazekas, and Proposed Defendant Timothy Peel searched Plaintiff Lopez's property located at 1550 Vista Del Valle way, La Habra Heights;

2. That Defendant Rafferty Wooldridge, Proposed Defendant Scott Fazekas, and Proposed Defendant Timothy Peel's search were unreasonable;

3. That Defendant Rafferty Wooldridge, Proposed Defendant Scott Fazekas, and Proposed Defendant Timothy Peel were acting or purporting to act in the performance of their official duties;

4. That Plaintiff Lopez was harmed; and

5. Defendant Rafferty Wooldridge, Proposed Defendant Scott Fazekas, and Proposed Defendant Timothy Peel's unreasonable search were a substantial factor in causing Plaintiff Lopez's harm.

116. Plaintiff is informed and believes and thereon alleges that the above-mentioned City Employees-Defendants all conspired to harm Plaintiff knowingly and willfully, with malice and oppression.

117. As a result of the above alleged conspiracy, all Defendants have jointly taken a series of retaliatory acts against Plaintiff, and Plaintiff has been harmed by their excessive oppression. Plaintiff has suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety,

worry, mortification, shock, humiliation and indignity as well as financial difficulty.

118. The series of wrongdoings were substantial factors in causing Plaintiff's harm. Therefore, Plaintiff is entitled to an award of damage.

119. Defendant City of La Habra Heights is vicariously responsible for the conspiracy among its Employees-Defendants, under California Government Code Section 815.2 and other applicable statutory and case laws.

120. By these actions, City Employees Defendants interfered and/or attempted to interfere with Louie's life which is constitutionally protected liberty interests, and did so without excuse or justification. These acts exceeded the bounds of common decency usually tolerated by a civilized society.

121. Plaintiff is informed and believes that City Employees Defendants, and each of them, intended to cause harm to Plaintiff, or acted with reckless disregard for the possibility that Plaintiff would suffer extreme emotional distress as a result of the outrageous conduct listed above.  City Employees knew of Plaintiff's susceptibility to injuries through mental distress in order to inflict trauma; and/or they acted intentionally or unreasonably with the recognition that the acts were likely to result in illness through mental distress. Said conduct was done with deliberate indifference to the liberty interests of Plaintiff. Not too hard to see the racial/discriminatory actions of the City.

122. As the direct and proximate result of the City Employees Defendants extreme and outrageous conduct, Plaintiff have suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in an amount subject to proof at trial. Nobody, including Plaintiff, could

reasonably be expected to endure the types of affront inflicted upon Plaintiff without sustaining the type of damages herein alleged.

123. Plaintiff is informed and believes and thereon allege that City Employees Defendants acted knowingly and willfully, with malice and oppression, and with the intent to harm Plaintiff. That City Employees Defendants' wrongful acts above-mentioned were substantial factors in causing plaintiff Mr. Lopez harm. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing said governmental agents, and to deter them and others from such conduct in the future.

124. City of La Habra Heights is vicariously responsible for the conduct of City Employees, under California Government Code section 815.2 and other applicable statutory and case law.

## V  Prayer for Relief

WHEREFORE, Plaintiff Louie Lopez prays for judgment against Defendants, as to all causes of action, following reliefs:

1. General damages and special damages according to proof, but in no event less than $3,000,000 pursuant to Government Code Section 815.3 (a) against City of La Habra Heights.

2. As against each of the individual Defendants, punitive damages as allowed by law [Government Code Section 815.3 (b) ]:  $1,000,000;

3. Attorney fees and costs pursuant to 42 U.S.C. § 1988 (b), and any other appropriate statute;

4. Plaintiff requests the following Injunctive relief:

    a.  Plaintiff seeks restoration of his electricity to the property 1550 Vista Del Valle Way which was cut off on 09/04/2018 by Building Official Scott Fazekas.

    b.  Plaintiff seeks protection from the Defendant's accusations of code violations and abusive power. Plaintiff is seeking relief of such accusations by using Nonconforming residential use and land use element policy 23 regulating houses built because the establishment of the city (paragraph 23 through 25)

    c.  Plaintiff prays the Court to give Plaintiff relief by a judgment so that Plaintiff could be relieved from homelessness.

5.  Costs of suit incurred herein;

6.  Such further relief as the Court deems just and proper.

## VI   Jury Trial Demanded

Plaintiff, Louie Lopez, demands a jury trial as to all issues so triable.

Dated: February 21, 2022

*LOUIE LOPEZ*

_____

Louie Lopez, Plaintiff in Pro Per

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

# DECLARATION/VERIFICATION

**Declaration under Penalty of Perjury Form (Code Civ. Proc., §§ 446, 2015.5)
Verification of Pleading (Code Civ. Proc., § 446) by Party**

CASE NO.:  8:21-cv-01193-JGB-MAR

CASE TITLE   Louie Lopez v. City of La Habra Heights et al.

I,      Louie Lopez   , declare:

                              (Name)

I am the     Plaintiff      in the above-entitled matter. I have read the
foregoing   Civil Rights Complaint pursuant to 42 U.S.C. § 1983 (non-
prisoners) and Injunctive And Declaratory Relief  (pleading, e.g., complaint)
and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are
therein stated on information and belief, and, as to those matters, I believe it to be
true.

Executed on    February 21, 2022  ,  at     Los Angeles County  , California.

I declare (or certify) under penalty of perjury that the foregoing is true and correct.


                                        *LOUIE LOPEZ*

                                        _____

                                                  Signature

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

**PROOF OF SERVICE**

LOPEZ v. CITY OF LA HABRA HEIGHTS, et al.

United States District Court – Central Division

*Case No. 8:21-cv-01193-JGB-MAR*

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

**CERTIFICATE OF SERVICE**

I certify that on, I filed the document listed below with the clerk of the court for the United States District Court, Central District of California by using the court's CM/ECF system, and also served counsel of record via this court's CM/ECF system.

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

DATED: February 21, 2022

Respectfully submitted,

(sign)   *LOUIE LOPEZ*

_____

(print name) LOUIE LOPEZ, Plaintiff in Pro Per

**PROOF OF SERVICE BY E-MAIL and MAIL**

*Lopez v. City of La Habra Heights et al.*

                                          Case Number: 8:21-cv-01193-JGB-MAR

        I am over the age of eighteen and not a party to the within action; my contact information is 2121 West Imperial Hwy, Ste E, #196, La Habra, CA 90631, California.

    On <u>February 21, 2022</u>, pursuant to California Code of Civil Procedure-CCP § 414.10, I served the documents described as:

First Amended Complaint pursuant to 42 U.S.C. § 1983 (non-prisoners) and Injunctive Relief

(list the names of any other documents you are mailing)
on all interested parties (see attached Exhibit - Defendant Service List) in this action by placing a true and correct copy thereof in a sealed envelope, with first-class postage prepaid thereon, and deposited said envelope in the United States mail at La Habra, California addressed to:

Attorneys Edwin J. Richards and

Rebecca L. Wilson

KUTAK ROCK LLP

Telephone: (949) 417-0999   Facsimile: (949) 417-5394

5 Park Plaza, Suite 1500 Irvine, CA 92614-8595

I declare under penalty of perjury that the foregoing is true and correct.

        Executed on <u>February 21, 2022</u>, at Los Angeles, California.

                    (sign)        *Wen-Tzu Davis*

                    _____

                    (print name)        Wen-Tzu  Davis